UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA (MIAMI)

CASE NO 1:18CR20602-KMW

UNITED STATES OF AMERICA

V

JUAN BERNARDO RODRIGUEZ LOZADA

### SENTENCE MEMORANDUM

COMES NOW the defendant, through counsel, and pursuant to the provisions of 18 United States Code 3553(a) herein respectfully alleges and prays:

1. Sentence in this case presently is set for February 22, 2019 at 1:00 PM.

2. The defendant and undersigned counsel have read and reviewed the Presentence Investigation Report as translated in the Spanish language and have notified the Probation Office there are no factual corrections or amendments to be made to the Report.

3. On February 4, 2019, the defendant filed a First Motion to Continue Sentence [123] on grounds the government had taken the position the recently enacted First Step Act did

not apply to defendants charged under Maritime Drug provisions of Title 46, such as these defendants, who changed their pleas before but who would be sentenced after passage of the Act on December 21. 2018. In a pleading filed on February 8, 2019 [125], the government reversed its position and stated these defendants who qualify under USSG 5C1.2 should be afforded the full benefits of 18 United States Code Section 3553(f) and sentenced without regard to the minimum mandatory previously applied to maritime defendants charged under Title 46 United States Code. Given this clarification the defendant is prepared to proceed to sentence as scheduled.

4. The defendant, Juan Rodriguez Lozada, was born into an abusive family relationship between his mother and his father, who was a drug addict, PSI 37-38. Since his father's death in 2010, Rodriguez Lozada has assumed the role of provider for his mother, who is incapacitated, and his young son Geronimo Rodriguez Gomez (age 2), Composite letters of support, translated into English by the undersigned, and accompanying family photographs, Exhibit A.

5. Juan Bernardo Rodriguez Lozada was born in the inland city of Tulua, Colombia some two hours drive from the capital city of Bogota. Far from any coastal city, Rodriguez Lozada acquired none of the seafaring skills that come so naturally to natives living along Colombia's many beautiful beaches. Shortly before undertaking the voyage for which he stands convicted, he was employed doing odd jobs in the automobile district in and around the capital city of Bogota. There he met an individual who, over a period of time, recruited Juan Bernardo to assist in undertaking a voyage by boat transporting cocaine from Ecuador to Mexico. Juan Bernardo's role was to be that of a load-guard, but the

name as applied to the defendant is a misnomer. Juan Bernardo's job was limited to counting bales that left Ecuador to communicate that count to his Mexican counterpart; he had no ability to "guard" the load and carried no guns aboard the vessel. As attested in the attached Exhibit A, Juan Bernardo has no criminal record and this was to have been his first venture at sea. The passage, as described to the undersigned, was fearsome. Unruly seas and giant swells plagued the voyagers for weeks. The defendant, unaccustomed to the ocean was seasick much of the time, and when the Coast Guard pulled the mariners out of their boat in a raging storm on June 28, 2018, the defendant's hands and face were so transmogrified by sea and wind when both collide he could hardly haul himself up the CG rope ladder.

6. Any sentence imposed by the Court must begin with a computation of the advisory sentencing guideline range, *United States v Booker 543 U.S. 220 (2005)*. In that connection, the Probation Office has calculated the advisory sentence guideline range to be 135-168 months based upon a Total Offense Level of 33 and a Criminal History Category of I. The defendants were deemed of equal culpability and none were afforded a minor role adjustment, PSI par 16. The Probation Office determined the defendant does qualify for the Safety Valve, PSI par 22.

7. Once the advisory guideline range has been computed, the Court may diverge from that recommended guideline range pursuant to provisions of 18 United States Code Section 3553(a). As stated earlier, this has a special effect in this case as the Court may, pursuant to the First Step Act if the government's revised interpretation is accepted sentence the defendant without regard to the erstwhile mandatory minimum in the fashion that is

intended under the dictates of the Supreme Court directive to sentence each defendant in accordance with his/her personal characteristics and circumstances, *Pepper v United States 562 U.S. 476 (2011).*

8. Upon departing from the advisory guideline range, the Court must take into consideration all of the factors listed in 18 United States Code Section 3553(a), that is: the nature and circumstances of the offense and the need for the sentence to reflect the seriousness of the offense, protect the public and afford adequate deterrence to criminal conduct.

9. It is noteworthy the First Step Act, in addition to affording Title 46 low level defendants the full benefit of the safety valve, is designed and defined to be a law that will address the issue of *recidivism.* There will be programs in place throughout the BOP that will benefit prisoners in many different ways, including carving time off their sentence upon completion of special programs addressing that issue. One type of prisoner will not benefit, however: DEPORTABLE PRISONERS INELIGIBLE TO APPLY TIME CREDITS ---"A prisoner is ineligible to apply time credits (and) any alien who seeks to earn time credits are subject to proceedings (removal) at a date as early as possible during the prisoner's incarceration". Nor do other well-intended provisions of the Act, such as moving the prisoner to a facility within 500 miles of the defendant's home so that he may visit with family members, assist the alien.

10. There can be no doubt the crime herein is serious and needs to be addressed as such. At the same time, this defendant's personal characteristics and circumstances are such that a variance from the recommended guideline range is warranted. During the time of his incarceration   Juan Bernardo Rodriguez Lozada has expressed his deep regret and

acceptance of responsibility for his involvement in this criminal conduct. He immediately signed a Plea Agreement stating there were in excess of 450 kilos of cocaine aboard the vessel, an issue that was in dispute as the Coast Guard was only able to recover just over 200 kilos from stormy seas.  The government has indicated it is not in a position to file a USSG 5K1 departure until all the defendant's cooperation is complete and all defendants have been sentenced, however the Court may take this matter into consideration when accounting for the defendant's character. On the numerous occasions the undersigned has visited with the defendant while in custody he been respectful, even-tempered and soft-spoken. He has undeniably expressed remorse for his actions and advised that even before capture he decided never to engage in this activity again. He has a family and friends who will be his Program against Recidivism and most important he has a son, GERONIMO age 2 who anxiously awaits his father's return.

WHEREFORE IT IS RESPECTFULLY PRAYED THE COURT GRANT THE DEFENDANT A VARIANCE FROM THE ADVISORY SENTENCING GUIDELINE RANGE SUCH THAT THE SENTENCE BE SUFFICIENT BUT NOT GREATER THAN NECESSARY TO ACHIEVE THE ENDS OF JUSTICE FOR ALL.

Respectfully,

/s/Scott Kalisch
SCOTT KALISCH
FLORIDA BAR #367877

**CERTIFICATE OF SERVICE**

I hereby certify that I have mailed copy of this Sentence Memorandum to all counsel of record and to AUSA Frank Tamen by EC/ECF electronic transfer this 12th day of February 2019

/s/Scott Kalisch

SCOTT KALISCH

435 SOUTH OREGON AVENUE, SUITE 104

TAMPA, FLORIDA 33606

TEL 305 669 0808